UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:98-cr-319-J-32MCR
                                                           3:01-cr-22-J-32MCR


TERRAL D. WILLIAMS a/k/a
Terrell Devon Williams
_____/

**REPORT AND RECOMMENDATION[1]**

**THIS CAUSE** is before the Court on Defendant's *pro se* Motion to Correct

and Adjust the Restitution Amount That Has Been Paid, Seized, But Not Credited

Towards the Final Restitution Amount and Order in This Cause Pursuant to the

Eleventh [Circuit] Court of Appeals [sic] Remand on September 29, 2000 Upon

the Sole Issue of Determination of the Manner and Schedule for Defendant's

Payment of Restitution ("Motion") (Doc. 248 in Case No. 3:98-cr-319-J-32MCR;

Doc. 140 in Case No. 3:01-cr-22-J-32MCR), filed on July 25, 2017; United States'

Response in Opposition thereto ("Response") (Doc. 254 in Case No. 3:98-cr-319-

J-32MCR; Doc. 143 in Case No. 3:01-cr-22-J-32MCR), filed on August 23, 2017;

and Defendant's *pro se* Motion in Opposition to the Government's Response,

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Crim.P. 59(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

construed as a "Reply" (Doc. 255 in Case No. 3:98-cr-319-J-32MCR; Doc. 144 in Case No. 3:01-cr-22-J-32MCR), filed on August 30, 2017.  On September 25, 2017, Judge Corrigan referred Defendant's Motion to the undersigned for an appropriate resolution or a report and recommendation, whichever is appropriate. (Doc. 256 in Case No. 3:98-cr-319-J-32MCR; Doc. 145 in Case No. 3:01-cr-22-J-32MCR.)[2]  For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion be **TERMINATED**.

### I.    Background

Defendant pled guilty to bank fraud in violation of 18 U.S.C. §§ 1344 & 2, and false use of a social security number in violation of 42 U.S.C. § 408(a)(7)(B).[3] (Docs. 29, 45.)  As part of the plea agreement, Defendant agreed to make full restitution to the Jax Navy Federal Credit Union and the Educational Community Credit Union pursuant to 18 U.S.C. §§ 3663A(a) and (b).  (Doc. 29 at 4.)

On July 29, 1999, United States District Court Judge Ralph W. Nimmons, Jr. sentenced Defendant to a term of imprisonment and supervised release, and ordered a special assessment of $200.00 and restitution in the amount of $25,929.00 in favor of the credit unions.  (Doc. 56.)  A Judgment was entered on

---

[2] From this point forward in this Report and Recommendation, the undersigned will cite only to the docket in Case No. 3:98-cr-319-J-32MCR, unless indicated otherwise.

[3] In Case No. 3:01-cr-22-J-32MCR, Defendant pled guilty only to bank fraud in violation of 18 U.S.C. § 1344.  (Doc. 3 in Case No. 3:01-cr-22-J-32MCR.)

July 30, 1999, directing full payment of the monetary penalties immediately.[4]
(Doc. 57.)

Defendant appealed the Judgment, entered on July 30, 1999, to the
Eleventh Circuit, arguing that the District Court erred in ordering immediate
restitution without consideration of his financial resources.  (Doc. 58; Doc. 82 at
3.)  The Eleventh Circuit found that although it was proper to order restitution in
the full amount under the Mandatory Victim Restitution Act ("MVRA"), the District
Court was required, pursuant to 18 U.S.C. § 3664(f)(2), to consider Defendant's
"financial circumstances in specifying the manner and schedule of payment."
(Doc. 82 at 7.)  Because Defendant's financial circumstances had not been
considered when ordering immediate payment of restitution, the Eleventh Circuit
vacated the portion of Defendant's sentence which required immediate payment

---

[4] In Case No. 3:01-cr-22-J-32MCR, Defendant was later sentenced to a term of
imprisonment (to run concurrent with the undischarged term of imprisonment in Case
No. 3:98-cr-319-J-32MCR) and supervised release, and ordered to pay a special
assessment of $100.00 (due immediately) and restitution in the amount of $11,749.00.
(Docs. 14 & 15 in Case No. 3:01-cr-22-J-32MCR.)  The Judgment, entered on April 23,
2001, provided:

> The economic circumstances of the [D]efendant do not allow the payment
> of any amount of the restitution hereinabove required and do not allow for
> the payment of the full amount of a restitution order in the foreseeable
> future under any reasonable schedule of payments.  The [D]efendant will
> be required to notify the Court, through the Probation Office, of any
> material change in the [D]efendant's economic circumstances that might
> affect the [D]efendant's ability to pay the restitution and also, that the
> [D]efendant, upon his release from imprisonment and obtaining gainful
> employment, or otherwise achieving a regular income, will be required to
> commence payment of regular monthly payments in a reasonable amount
> to be determined by the United States Probation Office.

(Doc. 14 at 8; Doc. 15 at 6 in Case No. 3:01-cr-22-J-32MCR.)

of restitution, and remanded the matter to the District Court for reimposition of

restitution in accordance with 18 U.S.C. § 3664(f)(2).  (Doc. 82 at 7-8.)

In accordance with the remand order and after holding a hearing on March

27, 2001, Judge Nimmons entered an Order on Restitution on March 30, 2001.

(Docs. 91, 93.)  He vacated the portion of the Judgment which required

immediate payment of the full restitution amount, and found as follows:

> [B]ased upon the evidence before the Court, the economic
> circumstances of the [D]efendant do not allow the payment of any
> amount of the restitution order that has heretofore been entered in
> this case and do not allow for the payment of the full amount of a
> restitution order in the foreseeable future under any reasonable
> schedule of payments.  The [D]efendant will be required to notify the
> Court, through the Probation Office, of any material change in the
> [D]efendant's economic circumstances that might affect the
> [D]efendant's ability to pay the restitution and also, that the
> [D]efendant, upon his release from imprisonment and obtaining
> gainful employment or otherwise achieving a regular income, will be
> required to commence payment of regular monthly payments in a
> reasonable amount to be determined by the United States Probation
> Office.

(Doc. 93 at 1-2; Doc. 254-3 at 2-3.)  The new Judgment, reflecting the above

findings, was entered on April 23, 2001.[5]  (Doc. 254-4.)

In the instant *pro se* Motion, Defendant seeks "to correct and adjust the

restitution" amounts he owes in both cases (3:98-cr-319-J-32MCR and 3:01-cr-

22-J-32MCR), in light of a notice he claims to have received from "the U.S.

---

[5] Because this Judgment was entered only in Case No. 3:01-cr-22-J-32MCR, it
reflected the special assessment of $100.00 due immediately and restitution in the
amount of $11,749.00.  (*See* Doc. 15 in Case No. 3:01-cr-22-J-32MCR.)

4

Department of Justice Administrative Offset Notice department" on April 19, 2017 "as to full payment in these cases."  (Doc. 248.)  Defendant claims that the following payments have not been credited towards his restitution: a cashier's check payable to the Clerk of Court for $10,000.00 and "the $5,000.00 plus that was taken out of [D]efendant's pockets by the U.S. Secret Service and seized." (*Id.*)  Defendant asks the Court to "review the record and evidence of these credits, seizures and payments," because he "sincerely wants to resolve this matter so that he can establish a monthly payment schedule while serving the supervised release portion of his sentence."  (*Id.*)  Defendant also asks the Court to waive any interest on the restitution amount.  (*Id.*)

In its Response, the Government urges the Court to deny Defendant's *pro se* Motion, because, *inter alia*, it does not include any supporting documentation, including the "notice" that Defendant allegedly received from "the U.S. Department of Justice Administrative Offset Notice department" on April 19, 2017. (Doc. 254 at 4.)  The Government points out that it has not been able to verify the existence of "the U.S. Department of Justice Administrative Offset Notice department."  (*Id.*)

With respect to the payments made, the Government explains:

> 4.    In Case No. 3:98-cr-319[], to date, the ledger reflects that the Defendant made payments (in other words, offset or reduced the amount of restitution owed) totaling $10,072.00 toward the restitution, leaving a balance due of $15,857.00.

     5.     In Case No. 3:01-cr-22[], to date, the ledger reflects that the Defendant paid a total of $75.00, which amount was credited toward the Special Assessment.  The ledger does not reflect any payments toward restitution, which would result in a balance due of $11,749.00.
. . .

     7.    . . . Regarding any purported payments that are not credited to the restitution balances in each of the aforementioned cases, JIFMS[6] advised that the ledgers are current and accurately reflect all payments received by the Clerk, U.S. District Court in both cases.  The issue of any payments relative to a seizure by the United States Secret Service was previously ruled upon by then[] United States Magistrate Judge Marcia Morales Howard. . . . In substance[,] on November 1st, 2005, then[] Magistrate Judge Howard ordered that $4,902.00 seized from the Defendant be applied toward the restitution owed.  As reflected in the ledger for Case No. 3:98-cr-319[], on November 28, 2006, a payment of $4,902.00 was credited toward the Defendant's restitution balance.

     8.    [Defendant] further asserts that no payments were credited toward either restitution balance while serving his sentence in the Bureau of Prisons.  This statement is inaccurate.  Both ledgers reflect payments with "BOP"[7] and "IPAC"[8] in the "DESCRIPTION" area of the ledgers.

(Doc. 254 at 3-4, 5; *see also* Doc. 254-5; Doc. 254-7.)

In sum, the Government's Response "disputes that the Defendant has made any payments that were not credited toward his restitution balance in both cases."  (Doc. 254 at 6.)  As to Defendant's request to waive the interest owed in each case, the Government states that "[t]here is no indication on either ledger

---

[6] JIFMS stands for the Judiciary Integrated Financial Management System.

[7] "BOP" stands for Bureau of Prisons.

[8] "IPAC" stands for Intra-Government Payment and Collection.

that the Defendant's restitution balances are accruing interest." (*Id.* at 5.)  Finally, the Government notes that "Defendant's reference to the remand by the Eleventh Circuit Court of Appeals in 2000 does not provide legal authority for altering the judgments or somehow appealing the judgments years later" and observes that "the sole issue on remand was addressed by United States District Court Judge Ralph W. Nimmons, Jr. in his Order dated March 29th, 2001." (*Id.* at 6.)

In his *pro se* Reply, Defendant attempts to rebut the Government's assertions by attaching the first page of a Notice of Intent to Offset, dated April 19, 2017 and issued by the U.S. Department of Justice.  (Doc. 255-1.)  This incomplete Notice indicates that the balance due in Case No. 3:01-cr-22-J-32MCR is $11,749.00.  (*Id.*)  Defendant reiterates that he "did give a $10,000.00 cashier's check to the Clerk of Court as a[n] initial payment towards [] his restitution while on bond" and that the Clerk's Office has verified receipt of this payment.  (Doc. 255 at 1-2.)  He adds that "this $10,000.00 has nothing to do with the $4,902.00 that was seized from the Defendant's pockets at the time of arrest" and that "$75.00 was also paid to the Clerk[,] totalling [sic] $10,075.00." (*Id.* at 2.)  Defendant also states that when the $10,000.00 payment was made, he was represented by Assistant Federal Public Defender James Burke, at which time Judge Corrigan ordered that the $2,500.00 surplus from the representation by Assistant Federal Public Defender Rosemary Cakmis, be credited to Defendant's restitution balance.  (*Id.* at 3.)

7

In his Reply, Defendant moves the Court: (1) for a fair and impartial evidentiary hearing; (2) for an order directing the Government to show proof as to the correct balance, reflecting Defendant's payment of $10,075.00, plus $4,902.00 for the seizure, plus the monthly payments made while he was in prison; (3) for an order directing the Clerk's Office to present the $10,000.00 draft paid by Defendant; and (4) for an order appointing counsel for Defendant. (*Id.* at 2-3.)

On October 18, 2017, the Court held a hearing on Defendant's request for a court-appointed attorney. (Docs. 258 & 260.) The Court appointed Roland Falcon, Esq. to represent Defendant in this matter and directed Mr. Falcon to file, on or before October 31, 2017, a renewed motion and memorandum of legal authority setting forth Defendant's position on the restitution issue, if it was not resolved by the parties by that time. (*Id.*) The Court directed the Government to respond to Defendant's renewed motion no later than November 6, 2017 and set the matter for a hearing on November 7, 2017. (Doc. 260.) The Order provided: "Should the parties resolve the restitution issue prior to the hearing, they shall immediately file a joint notice of resolution with the Court." (Doc. 260 at 2.)

On November 1, 2017, Defendant, through counsel, filed a Consent Motion to Continue the November 7, 2017 Hearing and for an Accounting. (Doc. 261.) Defense counsel advised that in determining whether his client's *pro se* Motion was frivolous, counsel had to review the dockets of the following cases, in which

8

his client was named as a Defendant: 3:98-cr-319-J-32MCR, 3:01-cr-22-J-32MCR, and 3:05-cr-100-J-32MCR, as well as their respective appeals (99-13026E, 04-10055-1, and 05-16750-E).  (*Id.*)  Defense counsel's investigation revealed that the restitution in Case No. 3:98-cr-319-J-32MCR was $25,929.00; the restitution in Case No. 3:01-cr-22-J-32MCR was $11,749.00; and the restitution in Case No. 3:05-cr-100-J-32MCR was $0.  (*Id.*)  As such, according to defense counsel, the combined amount for all three cases was $37,678.00, minus payments totaling $10,072.00, leaving a balance of $27,606.[9]  (*Id.*) Defense counsel represented that in light of the "very complicated" nature of this matter, the parties have agreed to a 60-day continuance of the November 7, 2017 hearing and for an accounting in order to determine the exact amount of restitution still owed by Defendant.  (*Id.*)

On November 2, 2017, the Court granted Defendant's Consent Motion to Continue the November 7, 2017 Hearing and for an Accounting.  (Doc. 262.)  The Court directed the United States Attorney's Office to provide an accounting no later than December 15, 2017 and set a status conference for January 4, 2018. (Docs. 262 & 264.)

On December 15, 2017, the Government filed a detailed accounting, providing the following information:

---

[9] Defendant apparently miscalculated this amount when he noted that it was $22,704 instead of $27,606.

- in Case No. 3:98-cr-319-J-32MCR, the outstanding restitution was $15,782.00 (restitution of $25,929.00, minus payments totaling $10,147.00 ($25.00 + $5,000.00 + $145.00 + $4,902.00 + $75.00)),[10] plus accruing interest,[11] and

- in Case No. 3:01-cr-22-J-32MCR, the outstanding restitution was $11,749.00 (no payments have been made[12]), plus accruing interest.

(Doc. 266; Doc. 266-1; Doc. 266-2; Doc. 266-3.)  As such, according to the Government's accounting, the total outstanding restitution was $27,531.00, plus accruing interest.  (Doc. 266.)

On January 2, 2018, Defendant moved, with the Government's consent, to continue the January 4, 2018 status conference for 60 days, so the parties could obtain any relevant documents and attempt to resolve the following issues:

So far[,] both parties agree and [have] determined that [Defendant] was ordered by the Court to deposit $7,500.00 for any

---

[10] Defendant also paid $30.00 towards his $200.00 special assessment.  (Doc. 266 at 2 n.2.)  However, since special assessments are valid for five years, Defendant's special assessment expired in 2004.  *See* 18 U.S.C. § 3013(c).  The Government states that the ledger shows a credit of $170.00 in order to balance the ledger.  (Doc. 266 at 2 n.2.)

[11] As stated in the Judgment, "[D]efendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f)."  (Doc. 254-4 at 6.)  The ledgers do not show any accruing interest.  (Doc. 266-1; Doc. 266-2.)

[12] The Government notes that the Clerk mistakenly applied a payment of $75.00 to the 2001 case, but the payment was properly credited to the 1998 case in September 2017, because all payments need to be credited to the oldest debt first.  (Doc. 266 at 3.)

costs associated with his appeal.  By statutory right, the Federal
Public Defender's Office was only entitled to $5,000.00, and by
Order of the Court[,] [Defendant] was entitled to a credit.  As of the
writing of this Motion[,] the Federal Public Defender's Office has not
provided an accounting[,] although both parties have requested
information and accounting numerous times.

 . . . As of the writing of this Motion, both parties are attempting
to determine the legal aspects of the automobiles in question.  The
[Government] by and through the Forfeiture Division will be filing a
supplemental response in the next few days regarding this very
issue.

 . . . Both parties agree that restitution has a statutory time limit
of twenty (20) years and both parties need to determine the time
limitations associated with the 1998 and 2001 case.

(Doc. 267 at 1-2.)  The Court granted the motion for continuance and

rescheduled the status conference to March 6, 2018.  (Docs. 268, 269.)

 At the status conference on March 6, 2018, the parties updated the Court

on the status of the restitution matter.  (Doc. 273.)  On September 17, 2018, the

Government filed a Notice of Williams's Restitution Credit, stating that "[a]fter the

status conference, Defender Services traced the CJA funds, and a $2500 credit

posted to Williams's restitution balance on July 23, 2018."  (Doc. 274 at 1.)

 On September 27, 2018, the Court held another status conference in this

matter and directed the parties to file a status report no later than October 29,

2018 regarding the outstanding restitution.  (Docs. 276, 277.)  On October 25,

2018, defense counsel filed a Joint Notice of Case Status, stating that the parties

reached an agreement on the restitution issues in Case No. 3:98-cr-319-J-

32MCR and Case No. 3:01-cr-22-J-32MCR.  (Doc. 278.)  The Joint Notice stated,

in relevant part:

> On October 3, 2018, [Defendant] filled out a Financial Disclosure Statement that was furnished to the parties and the Court. AUSA Jewell, based on [Defendant's] Financial Disclosure Statement and ability to pay, agreed that the appropriate restitution for both cases would be set at $100.00 per month.  Counsel spoke to [Defendant] on October 25, 2018 relaying the settled upon amount and [Defendant] agreed to pay $100.00 per month as part of his restitution in cases 3:98-cr-319-J-32MCR and 3:01-cr-22-J-32MCR.
> Based on conversations with AUSA Jewell, AUSA Jewell will have the Department [o]f Justice initiate a monthly statement mailed directly to [Defendant], as agreed. . . . Both counsel for the Government and counsel for [Defendant] will await further Orders from the Court necessary to close out both cases, 3:98-cr-319-J-32MCR and 3:01-cr-22-J-32MCR.

(*Id.* at 1-2.)

## II.    Discussion

The MVRA sets forth the procedures for challenging a final order of

restitution.  *United States v. MacArthur*, 510 F. App'x 802, 803 (11th Cir. 2013)

(per curiam).  Specifically:

> 18 U.S.C. § 3664(*o*)(1) provides that an otherwise final order of restitution can be
> (1) corrected under Federal Rule of Criminal Procedure Rule 35;
> (2) appealed and modified under 18 U.S.C. § 3742;
> (3) amended under 18 U.S.C. § 3664(d)(5); or
> (4) adjusted under 18 U.S.C. §§ 3664(k), 3572, or 3613A.

*MacArthur*, 510 F. App'x at 803.  Section 3664(*o*) of the MVRA "provides an

exhaustive list of the ways in which a mandatory restitution order can be

modified."  *United States v. Puentes*, 803 F.3d 597, 599, 607 (11th Cir. 2015).

Here, Defendant does not (and cannot) argue that the restitution amount

should be corrected under Rule 35 of the Federal Rules of Criminal Procedure, because the fourteen-day deadline has passed.  Defendant also cannot seek modification based on an appeal under 18 U.S.C. § 3742, because he did not appeal on this basis and is now time-barred from doing so.  *See* Fed.R.App.P. 4(b).  Further, Defendant does not argue that the restitution amount should be corrected upon discovery of additional losses by the victims under 18 U.S.C. § 3664(d)(5).  In addition, it does not seem that Defendant is arguing for an adjustment in the restitution order based on any material change in his economic circumstances under 18 U.S.C. § 3664(k) or § 3572 (the latter section seems inapplicable because no fine was imposed in this case).[13]

Nevertheless, it is possible that Defendant filed his *pro se* Motion after a default on his restitution obligations upon his release from prison.  Pursuant to Judge Nimmons's March 30, 2001 Order, Defendant was "required to commence payment of regular monthly payments in a reasonable amount to be determined by the United States Probation Office" upon his release from imprisonment and obtaining gainful employment or otherwise achieving a regular income.[14]  (Doc.

---

[13] Although the Court directed Mr. Falcon to file a renewed motion and memorandum of legal authority setting forth Defendant's position on the restitution issue no later than October 31, 2017, defense counsel has not filed any memorandum setting forth the legal basis for Defendant's requested relief.

[14] It is unclear what Defendant's monthly payment amount was, if any, as set forth by the United States Probation Office, because such information has not been furnished to the undersigned.

93 at 1-2.)  Assuming there has been a default, the Court can "enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution."  18 U.S.C. § 3613A.

Here, Defendant's *pro se* Motion and Reply, which are construed liberally,[15] seek an adjustment of his restitution amounts.  However, Defendant has not filed any supporting documentation, including a copy of the notice that he allegedly received from "the U.S. Department of Justice Administrative Offset Notice department," which allegedly shows "full payment" of the restitution balance in his cases.  Thus, the undersigned has considered the parties' submissions, other relevant filings, and the representations made at the status conferences.

Based on the information presented, the undersigned concludes that Defendant's combined restitution amount for both cases (3:98-cr-319-J-32MCR and 3:01-cr-22-J-32MCR) is $25,031.00.[16]  Specifically, in Case No. 3:98-cr-319-J-32MCR, the outstanding restitution amount is $13,282.00 (restitution of $25,929.00, minus payments totaling $12,647.00 ($25.00 + $5,000.00 + $145.00 + $4,902.00 + $75.00 + $2,500)); and in Case No. 3:01-cr-22-J-32MCR, the

---

[15] The Eleventh Circuit has "long embraced the principle that *pro se* briefs should be construed liberally."  *Pieschacon Quijano v. U.S. Atty. Gen.*, 460 F. App'x 884, 887 (11th Cir. 2012) (per curiam).

[16] Defendant's special assessment expired five years after the Judgment.  *See* 18 U.S.C. § 3013(c).  Therefore, any argument as to the amount of special assessment is moot.

14

outstanding restitution amount is $11,749.00.[17]  Although Defendant asks the Court to waive any interest on his restitution amount, as the Government points out, there is no indication that Defendant's restitution balances are accruing any interest.  Further, the parties' agreement, as reflected in the Joint Notice, does not indicate that Defendant is obligated to pay any interest.

To the extent Defendant contends that an additional offset for $10,000 is warranted, he has not shown any proof that a check for $10,000 was given either to the Clerk of Court or to his attorney for submission to the Clerk of Court towards the payment of restitution in any of his cases.  Although Defendant stated in his Reply that the Clerk's Office had verified receipt of the $10,000 initial payment he had allegedly made while on bond, he nevertheless asked the Court, in the same filing, to order the Clerk's Office to present the $10,000 draft. (Doc. 255 at 1-3.)  Without any proof that this amount has been paid and in light of the parties' agreement that does not take into account this alleged payment, the undersigned determines that an offset in the amount of $10,000 is not warranted.

Defendant further claims in his *pro se* Motion that the sum of $5,000, which was taken out of his pockets and seized by the Secret Service during his arrest,

---

[17] As stated earlier, Defendant's payment of $75.00 was incorrectly applied to the 2001 case, but subsequently it was properly credited to the 1998 case.  (Doc. 266 at 3.) Since all payments should be credited to the oldest debt first, the undersigned recommends (to the extent there is any confusion and in the event that it has not been done yet) that the surplus from the representation of Defendant in the sum of $2,500 be credited to his 1998 case.  (*See* Docs. 241, 274.)

was not credited towards his restitution.  However, in an Order, dated November 1, 2005 and entered in Case No. 3:05-cr-100-J-32MCR, Judge Howard ordered that the sum of $4,902.00, which had been seized by the Government, be applied toward the restitution in Case No. 3:98-cr-319-J-32MCR and Case No. 3:01-cr-22-J-32MCR.  (Doc. 254-7.)  To the extent Defendant also claims in his *pro se* filings that his automobiles/trucks were seized by the Secret Service without an offset to his restitution amount, Defendant's earlier motion to that effect was denied by Judge Corrigan on May 10, 2005, and Defendant's present counsel conceded at the March 6, 2008 status conference that this issue cannot be re-litigated in light of that ruling.  (*See* Doc. 165.)

Further, the Joint Notice reflects the parties' agreement that Defendant's monthly payment be set at $100 per month for both cases and that the Department of Justice would initiate a monthly statement mailed directly to Defendant.  As such, the Court need not schedule a separate hearing on these issues and no further inquiry as to Defendant's ability to pay seems necessary at this point.

Finally, despite the parties' varying representations as to the expiration of the statute of limitations in these case, the Government advised at the September 27, 2018 status conference that Defendant's restitution debt for both cases would expire 20 years after his release from prison, or on October 10, 2021.  The undersigned agrees with the Government.  *See United States v. Pickett*, 505 F.

16

App'x 838, 841 (11th Cir. 2013) ("Under 18 U.S.C. § 3613(c), an order of restitution is a lien in favor of the United States, and the lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b). . . . The lien becomes unenforceable 20 years from the entry of judgment or 20 years after the release from imprisonment of the person, whichever is later, or upon the death of the person. [18 U.S.C.] § 3613(b).").  Thus, Defendant should continue making restitution payments in the agreed-upon amount until October 10, 2021.  In the event that any additional issues arise in the future, the parties shall promptly bring them to the Court's attention by filing a proper motion supported by relevant legal authority.

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (Doc. 248 in Case No. 3:98-cr-319-J-32MCR; Doc. 140 in Case No. 3:01-cr-22-J-32MCR) be **TERMINATED**.[18]  These cases should remain closed.

**DONE AND ENTERED** at Jacksonville, Florida, on June 3, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

---

[18] The undersigned notes that defense counsel advised the Court that Defendant's *pro se* Motion would be withdrawn if the parties reached an agreement on the restitution issues.  As an agreement has been reached and the Motion has not been withdrawn, it is appropriate to terminate Defendant's *pro se* Motion.

17

Copies to:

The Hon. Timothy J. Corrigan, U.S. District Judge
Assistant United States Attorney Jillian Jewell
Assistant United States Attorney Kevin Frein
Roland Falcon, Esq.
Terral Williams